**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID L. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-0223-F |
| ) | |
| PAUL GALYON, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Defendant, Oklahoma City Police Officer Paul Galyon, the sole remaining defendant, has moved for summary judgment. (Doc. no. 170.) Plaintiff, David L. Wilson, who appears *pro se* in this action and whose pleadings are liberally construed, has objected to the motion. Accordingly, the motion is ready for determination.

<u>Standards</u>

Officer Galyon moves for summary judgment under the traditional summary judgment framework, arguing that he is entitled to judgment as a matter of law based on the merits of this case.[1]

---

[1] Officer Galyon argues that the affidavits, photographs, and medical form demonstrate there is no evidentiary support for Wilson's allegations that he was stomped on, punched or tasered, so that "it is unnecessary to resolve the qualified immunity issue of whether such force, if employed, was prohibited by 'clearly established law.'" (Moving brief, unnumbered p. 8, n.2.) Officer Galyon then states that "to the extent <u>the court</u> believes qualified immunity is at issue," <u>Hinton v. City of Elwood</u>, 997 F.2d 774 (10th Cir. 1993) "suggests fairly significant force may be employed against even a misdemeanor arrestee who puts his own and an officer's safety at risk by actively resisting attempts to handcuff him." (Emphasis added.) Thus, it is not clear whether Officer Galyon asserts qualified immunity. If his mere mention of that defense is sufficient to assert it, then he only asserts it based on the presumption that the undisputed facts show there was no stomping, punching, or tasering after plaintiff was handcuffed. Plaintiff's response brief, however, raises disputed fact issues regarding alleged stomping, slamming, and wrenching before Mr. Wilson was handcuffed on April 16, 2005. Officer Galyon's presumption regarding the basis of any qualified immunity defense

(continued...)

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Discussion

With respect to Mr. Wilson's arrest by Officer Galyon at the I-40 and MacArthur bridge in Oklahoma City on April 16, 2005, Mr. Wilson's response to Officer Galyon's motion for summary judgment contends as follows.

Although Mr. Wilson admits that he threatened Officer Galyon and used obscenities, Mr. Wilson's response brief (at p. 2, ¶ 7) states that "I might have cursed Officer Galyon but I didn't kick at him." Although Mr. Wilson admits that he took his boot off and said, "if you do me again like you first done me I'm going to kick you

---

[1](...continued)
is, therefore, incorrect. For these reasons, there is no qualified immunity defense to resolve in this order.

in the fucking head," he contends he did not make these remarks until after Officer Galyon "kept pushing me down and stomping on me." (Response brief, p. 6, ¶ 3.) Mr. Wilson states that after Mr. Wilson rolled down the hill, "he [Officer Galyon] then came back and cuffed me." (Response brief, p. 2, ¶ 8.) Mr. Wilson then states that "I was escorted to Galyon cruiser, but during the walk he [Officer Galyon] kept pushing me down and stomping on me." (Response brief, p. 2, ¶ 9.) Mr. Wilson states that "during the 4/16/05 arrest we were walking back to cruiser and for no reason he kept pushing me down and stomping on me then would snatch me back up, we would take a few steps then he would do it again." (Response brief, p. 6, ¶ 3.) Mr. Wilson contends that the photos (attached to Officer Galyon's moving brief as Exhibit "3") show "I have dirt on the palm of my hand"; that "the only dirt around the slope is at the bottom of the slope"; that "the dirt on my hand shows I hit the dirt after being pushed down walking back to the cruiser," and that "[t]he photos of palm again shows my hand is swelling up and rapidly." (Response brief, p. 8, ¶¶ 3-7.)

The sequence described above indicates that, at least according to Mr. Wilson's version of events, some of the pushing and stomping alleged in this action occurred after Mr. Wilson was handcuffed. This chronology is also consistent with the sequence of events alleged in the complaint, which alleges that "[o]n 4/16/05 Paul Galyon pushed me down and stomped on me after being cuffed."

As for the injuries suffered by Mr. Wilson as the result of the alleged roughing up by Officer Galyon, Mr. Wilson contends that in addition to the abrasion on his hand which is shown in the photos, the photos do not show a "small abrasion" on his chest which occurred "when I was pushed down the last time and stomped on." (Response brief, pp. 2-3, ¶10.) (Mr. Wilson is wearing a shirt in the photos.) Mr. Wilson states that the photo of his hand shows that his hand is "swelling up & swelled" and "that's from being <u>slung</u> to the ground by first my back pack, then

several times my coat and back pack"; and that "the hand is 'abrased' by self-defense to keep me from breaking any hips or anything else being slammed to the ground some [sic] many times for such piddley [sic] tickets." (Response brief, p. 6, first of two paragraphs numbered 1.)  Mr. Wilson also states that "I was transported to jail after a trip to a hospital they take you to after they rough you up even on such piddly [sic] charges."  (Response brief, p. 3, ¶ 15.)  Although Officer Galyon offers the medical intake report from the jail as proof that there was no bleeding, trauma, or injury requiring immediate medical care, Mr. Wilson points out that the medical report does not mention the abrasion on his hand which is clearly pictured in the exhibits. Thus, Mr. Wilson suggests that the medical report is not credible with respect to whether or not Mr. Wilson had an abrasion on his chest or was otherwise hurt as a result of the events of April 16, 2005.  Officer Galyon argues that the medical report does not indicate any difficulty in movement, but Mr. Wilson responds by stating his shoulders "are screwed up from being wrenched backwards so many times," and asking "just how much movement can I do when my hands are cuffed behind my back [?]"  (Response brief, p. 5, ¶ 19.)

In short, Mr. Wilson has controverted Officer Galyon's proposed undisputed facts concerning the events of April 16, 2005 with a fair amount of detail.  He has also attempted to corroborate his facts by referring to other record evidence.  There are few sources for information regarding the events in question, because Lieutenant Thomas Hart was called to the scene and was not present during the parties' initial interactions. Determining the correct version of events therefore depends largely on the respective credibility of Mr. Wilson and Officer Galyon.  Although the court notes that Mr. Wilson's response brief is not a sworn affidavit, he is both the declarant and the plaintiff; he also appears *pro se* and so some latitude is appropriate in that regard.  For all of these reasons, the court finds and concludes that Mr. Wilson's contentions create

genuine issue of material fact regarding Officer Galyon's conduct during Mr. Wilson's arrest on April 16, 2005 at the I-40 and MacArthur bridge in Oklahoma City.

Turning to other matters put in issue by Officer Galyon's motion, statements made by Mr. Wilson in his response brief clarify that alleged tasering and punching occurred on dates other than on April 16, 2005, although April 16, 2005 is the only date alleged in the complaint. For example, Mr. Wilson's response brief contends that events referenced in the complaint as occurring at a McDonald's restaurant actually took place on May 27, 2005. Mr. Wilson may have intended to allege claims based on these other events as a part of this action; however, the complaint does not give adequate notice of claims arising from any events other than those of April 16, 2005.[2] At this late date, the court declines to now broaden this lawsuit to include any additional claims. As a result, any claims based on the alleged events of May 27, 2005 are not a part of this action. (For example, see references in Mr. Wilson's response brief at p. 5, ¶¶ 20-21, ¶ 2, to tasering and punching at McDonald's on May 27, 2005.) As it appears from Mr. Wilson's response brief that the only alleged

---

[2]The substantive portion of the complaint states, in its entirety, as follows. (Following this portion of the complaint are several pages of "demands." These demands are largely incoherent. They appear to list remedies the plaintiff seeks against various entities, including a number of non-parties.)

> On 4/16/05 Paul Galyon pushed me down and stomped on me after being cuffed. The ["third time" is marked out] excuse me second time I took my boots off, he then noticed I [had] taken my boots off, and asked why I took them off. I said if you do me like you just done me one more time I am going to kick you in the head. Then he puts me in car, dumps legal papers on ground. But he stomped (he) Paul Galyon #1071 stomped on me at least twice under I-40 and Macauthor [sic]. And then Paul Galyon #1071 punched me in the face in McDonalds at SW 3rd and Macauthur [sic]. Paul Galyon then pulled me out of his car (Paul Galyon (his)) so Paul Galyon's supervisor could burn holes in my back with TAZOR [sic]. Paul Galyon has 2 witness willing to commit perjury concerning who punches who first. Since Paul Galyon stomped on me I am having R hip problems. Paul Galyon also tore up shoulder meat, by wrenching arms backwards to put cuffs on.

tasering or punching occurred on May 27, 2005 and not on April 16, 2005, there is obviously no evidence of any tasering or punching on April 16, 2005. Accordingly, Officer Galyon is entitled to judgment as a matter of law on any claims of tasering or punching which the complaint could be construed as alleging occurred on April 16, 2005.

To reiterate, the claims which survive for trial are those which arise from Officer Galyon's alleged conduct during Mr. Wilson's arrest at the I-40 and MacArthur bridge in Oklahoma City, on April 16, 2005. Officer Galyon's moving brief characterizes the legal basis of these claims as 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.[3] Mr. Wilson does not take issue with this characterization, and it is a fair one. Thus, stated even more specifically, the claim which survives for trial is Mr. Wilson's Fourth Amendment claim which alleges that Officer Galyon used excessive force during Officer Galyon's arrest of Mr. Wilson on April 16, 2005 at the I-40 and MacArthur bridge in Oklahoma City.

At trial (as now), the excessive force claims will be analyzed under the objective reasonableness standard. Gross v. Pirtle, 245 F.3d 1151, 1158 (10th Cir. 2001), a qualified immunity case, citing Graham v. Connor, 490 U.S. 386, 395 (1989). The reasonableness of an officer's conduct must be assessed from the perspective of a reasonable officer on the scene, recognizing the fact that the officer may be forced to make split-second judgments under stressful and dangerous conditions. *Id*., citing

---

[3]The moving brief also states that Mr. Wilson could conceivably intend a Fourteenth Amendment due process claim, based on the allegation that Officer Galyon "dumped" Mr. Wilson's legal papers on the ground. Officer Galyon moves against any such claim. As stated in Graves v. Thomas, 450 F.3d 1215 (10th Cir. 2006), the ultimate standard for this type of claim is a determination that the challenged government action shocks the conscience of federal judges; negligence is not enough. *Id*. at 1220-21. There is no evidence to support such a claim in this action. Accordingly, to the extent Mr. Wilson may have intended to allege a Fourteenth Amendment due process claim based on Officer Galyon's mishandling of Mr. Wilson's legal papers or other personal property, Officer Galyon is entitled to summary judgment on that particular claim.

Graham at 396. The standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id*.

## Conclusion

After careful consideration of the parties' submissions, the record, and the pleadings, Officer Galyon's motion for summary judgment is **GRANTED** in part and **DENIED** in part, as follows.

To the extent that the complaint might be construed as alleging a Fourteenth Amendment due process claim, or claims based on tasering or punching on April 16, 2005, Officer Galyon's motion for summary judgment is **GRANTED** because there is no evidence to support such claims.

To the extent that the complaint alleges a § 1983 Fourth Amendment excessive force claim based on Officer Galyon's alleged conduct on April 16, 2005 during Mr. Wilson's arrest at the I-40 and MacArthur bridge in Oklahoma City, Officer Galyon's motion for summary judgment is **DENIED**, and this claim survives for trial.

This action will be put on a trial schedule by separate order.

Dated this 6th day of April, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0223p024(pub).wpd